IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE McWHINNEY,                       )
                                      )
       Plaintiff,                )
                                      )
     v.                          )   Civil Action No. 16-1144
                                      )
CAROLYN W. COLVIN,                    )
ACTING COMMISSIONER OF                )
SOCIAL SECURITY,                      )
                                      )
       Defendant.                )

O R D E R

AND NOW, this 20th day of September, 2017, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff's arguments revolve around whether Natalie Appetta, the Administrative Law Judge ("ALJ") in the present case, properly relied on a prior decision included in the record of this case issued by ALJ Joanna Papazekos pertaining to an earlier application for social security benefits filed by Plaintiff. In her January 10, 2013 decision, the prior ALJ had found that IQ test scores obtained in December of 2010 during a consultative examination related to the prior application were invalid, primarily because she found that Plaintiff was under the influence of alcohol and marijuana at the time he was tested. Plaintiff apparently believes that ALJ Appetta's reliance on nothing more than a prior ALJ's decision is improper based on his claim of borderline intellectual functioning in connection with the present application. The Court finds that there was nothing improper regarding ALJ Appetta's reliance on ALJ Papazekos' decision and that substantial evidence supports the ALJ's finding that Plaintiff is not disabled.

Plaintiff was subjected to IQ testing at a consultative examination with Stephen Perconte, Ph.D., in connection with his previous application for benefits in 2010. As noted, ALJ Papazekos rejected the scores from that test, providing an extensive explanation for doing so. She noted that Plaintiff, at the consultative examination, had admitted to smoking marijuana and drinking 12 beers a day. She further discussed how Dr. Perconte had found that Plaintiff, in fact, had a significant amount of marijuana and alcohol in his system at the time and that the IQ scores obtained during that exam should be viewed with caution. (R. 91, 94-95). ALJ Appetta, in this case, referenced the 2010 IQ scores and adopted by reference ALJ Papazekos' finding that the scores were invalid. (R. 18, 23).

There is no new evidence in the instant case regarding these scores or their validity, or of any new testing or scores since then. Indeed, the scores are no more than referenced in the record before ALJ Appetta and before this Court. Consultative examiner Ruth Ann Seilhamer, Ph.D., made fleeting reference to Plaintiff's IQ scores from 2010, but Dr. Seilhamer offered no opinion or evidence as to their validity in light of the reason why the 2010 scores had been discounted in the first place, *i.e.*, that Plaintiff was impaired when tested. Indeed, she did not even demonstrate any awareness that the scores had been invalidated. (R. 408).

There is no inherent problem with an ALJ relying on factual findings by another ALJ from previous hearings involving the same claimant. See Leonard v. Comm'r of Soc. Sec., 409 Fed. Appx. 298, 299 (11th Cir. 2011). Indeed, courts have readily allowed ALJs in social security cases to incorporate by reference and rely on findings and analysis contained in a previous ALJ's decision involving the claimant, particularly when there is no new evidence pertaining to the issue at hand. See, e.g., Billups v. Barnhart, 322 F. Supp. 2d 1220, 1225 (D. Kan. 2004); Musall v. Chater, No. 95-CV-494H, 1996 WL 200415, at *5 (W.D.N.Y. Apr. 2, 1996). Here, as stated above, there is no evidence pertaining to the scores obtained during the consultative examination in connection with Plaintiff's prior application for benefits that was not available to ALJ Papazekos at the time she rejected the scores. In fact, Plaintiff presented no

evidence regarding these, or any other IQ scores, at the hearing, and did not discuss borderline intellectual functioning at all.

Nonetheless, Plaintiff insists that the 2010 consultative report connected with his previous application should have been part of the record in this case so that ALJ Appetta could have reviewed it herself. This makes little, if any, sense in the context of this case. Again, there is nothing new in the record regarding the validity of the 2010 scores, nor did Plaintiff attempt to raise any such issue during the administrative proceedings. ALJ Appetta, of course, could not have re-examined the validity of the scores in connection with Plaintiff's prior application without re-opening that application (something neither requested nor done here), and the record is bereft of evidence of any change in Plaintiff's condition since ALJ Papazekos rendered her opinion in 2013. Indeed, there is literally no evidence of any related treatment since that time. Moreover, Plaintiff has in no way articulated how including the consultative report containing the previously rejected scores would have changed the outcome in his present case in light of the lack of any new evidence as to their validity. See Marling v. Colvin, No. 14-CV-146-JDP, 2015 WL 1486553, at *3 (W.D. Wis. Mar. 31, 2015). Accordingly, there is really no basis for remanding this matter on this ground, nor has Plaintiff cited any authority for doing so.

Plaintiff also argues that the state reviewing agent listed borderline intellectual functioning as a severe impairment, but that ALJ Appetta neither included it as a severe impairment in her decision nor explained her rejection of this finding. However, the ALJ did, in fact, explain why she did not include borderline intellectual functioning as a severe impairment at Step Two of the sequential analysis. (R. 23). More importantly, the mere fact that the ALJ did not include Plaintiff's alleged borderline intellectual functioning as a severe impairment does not in itself warrant remand. The Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, Civ. No. 05-104, 2006 WL 1073076, at *3 (W.D. Pa. Mar. 27, 2006). Since Plaintiff's claim was not denied at Step Two, it really does not matter whether the ALJ correctly or incorrectly found Plaintiff's borderline intellectual functioning to be non-severe.

Nonetheless, even if an impairment is non-severe, it may still affect a claimant's RFC. In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996). See also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p at *5. Here, however, the ALJ *expressly* indicated that she accounted for Plaintiff's borderline intellectual functioning in the RFC. (R. 18). Indeed, the RFC contains several restrictions pertaining to this condition,

3

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of record

---

including limiting him to routine and repetitive entry-level work, to non-production rate pace work, and to work not requiring reading or math as essential functions of the job. (R. 21).

In short, substantial evidence supports ALJ Appetta's findings in this case. Therefore, the Court affirms.